IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTHONY GOGGANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:18-cv-625-JTA |
| | ) (WO) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Anthony Goggans ("Goggans") challenges the Commissioner of Social Security's ("Commissioner") denial of his claim for disability and supplemental security income benefits. (Docs. No. 1, 18.)[1] On April 8, 2014, Goggans filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, alleging disability beginning June 17, 1992. The claim was denied initially on July 23, 2014. Goggans then filed a written request for a hearing on August 25, 2014. Goggans appeared at a hearing held on February 8, 2017. Following the hearing, the Administrative Law Judge ("ALJ") also denied the claim.

Goggans then requested a review of the ALJ's decision by the Appeals Council. The Appeals Council found no reason to change the ALJ's decision and denied his request

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

for review. Upon the Appeals Council's denial, the ALJ's ruling became a final decision. Goggans then brought this action under 42 U.S.C. § 405(g) and 5 U.S.C. § 706 for this court to review the final decision of the Commissioner. For the reasons explained herein, the Court concludes that the Commissioner's decision denying Goggans supplemental security income benefits is due to be AFFIRMED.

## I. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" To make this determination, the Commissioner employs a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. If the claimant is found to be disabled or not disabled at a step, the determination of disability is made, and the next step will not be considered. If a determination of disabled or not disabled cannot be made, the next step will be considered. Before moving from step three to step four, there is an assessment of the claimant's Residual Functional Capacity ("RFC"). The RFC will be used at steps four and five.

At the first step, the Commissioner will determine whether the person is engaged in substantial gainful activity. At step two, the Commissioner will determine whether the person's impairment is severe. Next, at step three, the Commissioner will see if the person's impairment, or combination of impairments, meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the person does not meet

one of the listings, the Commissioner will move on to step four, which is a determination of whether the person is unable to perform his former occupation. Then, in step five, the Commissioner will determine whether the person is unable to perform any other work within the national economy. An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

The burden of proof rests on the claimant for the first four steps of the process. *See Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 915 (11th Cir. 2015). A prima facie case of qualifying disability exists when a claimant carries the burden for step one through step four. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Taylor v. Acting Comm'r of Soc. Sec. Admin*, 761 F. App'x 966, 967 (11th Cir. 2019); *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Taylor*, 761 F. App'x at 969. Substantial evidence is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401. The Court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.

*Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2002). Even if the Court finds that the evidence weighs against the Commissioner's decision, the Court must affirm the Commissioner's decision if substantial evidence supports it. *Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

## II. ADMINISTRATIVE DECISION

Goggans alleges he is disabled due to tendonitis, the "locking up" of both his bones and joints, pain and swelling on his elbow, his mental health, and an inability to stay focused due to a "wondering mind." (R. 334.)[2] Goggans is a high school graduate but was in special education classes in junior high. (R. 21, 24, 421.) His prior work experience includes work as a flagger for the Alabama Department of Transportation, and as a housekeeper for a Hampton Inn Hotel. (R. 42, 43.) Goggans claims that the pain caused by the previous breaking of his left arm was the reason he could no longer perform in his capacity as a flagger or as a housekeeper. (R. 45, 48.) During the hearing, Goggans' past mental health problems were briefly discussed. (R. 59.) After the hearing, the ALJ sent Goggans to Dr. Robert Storjohann for a psychological consultative examination. (R. 24, 497.) After the evaluation, Dr. Storjohann concluded that Goggans was moderate and

---

[2] Citations to the Social Security Transcript of Administrative Proceedings, which was filed with the Court (*see* Doc. No. 20), are designated as "R."

markedly impaired in several areas. (R. 502, 503.) He based several of his conclusions on Goggans' complaints that he suffers from panic attacks and anxiety. (R. 498.)

Following the hearing and consultative examination, the ALJ concluded that Goggans was suffering from severe impairments consisting of (1) anxiety, (2) psychotic disorder, and (3) residual pain from a 1992 surgery to repair an elbow fracture. (R. 17.) Despite Goggans' severe impairments, the ALJ concluded that they did not meet or medically equal any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically 1.02B for his elbow pain, and 12.03 and 12.06 for his mental impairments. (R. 18.)

The ALJ also concluded that Goggans has the RFC to perform light work as defined in 20 C.F.R. 416.967, except with certain function-by-function limitations consisting of (1) being limited to performing simple, routine tasks; (2) not performing production rate or assembly line work; and (3) being absent from work no more than one day per month. (R. 19.) The ALJ ultimately concluded that, given Goggans' RFC and the testimony of the vocational expert, Goggans would be able to return to his past work as a flagger. (R. 29.) The ALJ did not consider Goggans' post-application employment as a housekeeper at the Hampton Inn as substantial gainful activity because his earnings were below the threshold. (R. 18.) The ALJ also determined that, considering Goggans' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. 30.) Based on her findings from the five-step process, the ALJ concluded Goggans was not disabled. (R. 31.)

### III.   ISSUE

Goggans raises one issue on appeal: Whether the ALJ properly considered the opinions of Dr. Storjohann.  (Doc. No. 18 at 3.)  Goggans argues the ALJ improperly dismissed portions of Dr. Storjohann's opinions because they were based on Goggans' subjective reports and improperly substituted her opinion for the opinion of Dr. Storjohann regarding whether Goggans presented signs of anxiety or nervousness.  (*Id*. at 6-8.)

In response, the Commissioner argues that the ALJ properly considered the reports and opinions of the medical sources in assessing Goggans' RFC.  (Doc. No. 19.)  The Commissioner asserts the ALJ "provided good reasons, supported by substantial evidence, for her determination to give only partial weight to Dr. Storjohann's opinions" and properly considered his opinions within the context of the entire record.  (*Id*. at 6-12.)  The Commissioner contends that Goggans urges the court to re-weigh the evidence to find he was "further limited than the ALJ found" and argues this court should reject Goggans' invitation to re-weigh the evidence.  (*Id*. at 12-13.)

This matter is ripe for review.

### IV.   DISCUSSION

A disability claimant bears the initial burden of demonstrating an inability to return to his past work.  *Williams v. Comm'r, Soc. Sec. Admin.*, 703 F. App'x 780, 784 (11th Cir. 2017); *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work

history.  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  The ALJ must conscientiously probe into, inquire of, and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the claimant's impairments.

> Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1).  The Court will address Goggans' appeal within this framework.

### A. The ALJ's Consideration of Dr. Storjohann's Opinions

The ALJ summarized the opinions of Dr. Storjohann which were developed from his April 3, 2017, psychological examination of Goggans.  (R. 24-25.)  The ALJ noted Goggans' various subjective reports and complaints to Dr. Storjohann as well as Dr. Storjohann's mental status evaluation of Goggans.  (R. 24.)  The ALJ also stated,

> [Goggans] was administered the Wechsler Adult Intelligence Scale, Fourth Edition (WASI-IV) and achieved a Full Scale IQ score of 78, which placed his overall abilities in the borderline average range.  [Goggans] was administered the Wide Range Achievement Test, Fourth Edition (WRAT4) and achieved scores that indicated low average to borderline academic abilities.  Dr. Storjohann opined the WAIS-IV and WRAT4 test scores indicate the presence of a mild intellectual disability.  Dr. Storjohann's diagnostic impression was: (1) Generalized Anxiety Disorder, and (2) Intellectual Disability, Mild.  Dr. Storjohann opined that [Goggans]'s prognosis was poor because of the chronicity of his anxiety problems, his intellectual limitations and his reported health problems and pain.

>Additionally, Dr. Storjohann completed a Mental Residual Functional Capacity Assessment. . . . Therein, Dr. Storjohann opined that [Goggans] had a mild limitation in the ability to remember simple instructions; a mild limitation in the ability to carry out simple instructions; a mild limitation in the ability to make judgments on simple work-related decisions; a moderate-to-marked limitation in the ability to understand and remember complex instructions; a marked limitation in the ability to carry out complex instructions; and a marked limitation in the ability to make judgments on complex work-related decisions. [Goggans] has a mild-marked limitation in the ability to interact appropriately with the public; a moderate-to-marked limitation in the ability to interact appropriately with supervisors and coworkers, and a marked limitation in the ability to respond appropriately to usual work situations and to changes in a routine work-setting. Furthermore, Dr. Storjohann noted [Goggans]'s ability to maintain concentration, persistence and pace is adversely affected when he takes medications to manage his chronic pain.

(R. 24-25.)

After consideration of all the evidence, the ALJ decided to give Dr. Storjohann's assessment that Goggans has marked functional limitations little weight. (R. 27.) The ALJ found that "[Goggans'] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Goggans'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 25.) When addressing Goggans' alleged mental impairments, the ALJ pointed out "the record documents that, during the relevant period, [Goggans] has not received any actual mental health treatment and had not been prescribed, or taken, an[y] psychotropic medications." (R. 26). The ALJ also pointed out that treatment records "do not document that [Goggans] complained of any depression, anxiety, hallucinations or delusions" and the "examination findings in those treatment records consistently document that [Goggans] exhibited normal mood and

affect." (R. 26.) The ALJ also noted that, although Dr. Storjohann diagnosed the claimant with Anxiety Disorder in the 2017 consultative evaluation, the longitudinal treatment records do not support Goggans' reports of frequent panic attacks, with resulting syncope episodes, and Goggans did not testify that he had panic attacks nor that anxiety or nervousness affected his ability to work. (R. 26.) The ALJ further found that Goggans' presentation at Dr. Storjohann's examination is not consistent with his presentation at the hearing and "the longitudinal treatment records consistently note that [Goggans] had normal mood and affect at the examinations, with no mention of anxiousness or nervousness." (R. 26-27.)

### B. The ALJ Properly Evaluated Dr. Storjohann's Opinions

When evaluating a physician's opinion, an ALJ considers factors such as whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. 20 C.F.R. § 416.927(c). Also, according to the relevant regulations, more weight is generally given to the opinions of treating physicians, or "treating sources," "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairments[.]" 20 C.F.R. § 404.1527 (c)(2). The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Cates v. Comm'r of Soc. Sec.*, 752 F. App'x 917, 922 (11th Cir. 2018); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1987). The ALJ must, however, articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion.

9

*Storey v. Berryhill*, 776 F. App'x 628, 635 (11th Cir. 2019); *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

At the outset, the Court notes that the ALJ was not required to give the opinions of Dr. Storjohann the same amount of weight that she gave to Goggans' treating physicians. It is uncontroverted that Dr. Storjohann examined Goggans on one occasion and did not treat him or have an ongoing treatment relationship with him. "A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation <u>and</u> who has, or has had, an ongoing treatment relationship with [the claimant].'" *Nyberg v. Comm'r of Soc. Sec.,* 179 F. App'x 589, 591 n.3 (11th Cir. 2006) (citing 20 C.F.R. § 404.1502) (emphasis added).  Dr. Storjohann thus was not a treating physician or "treating source" for Goggans and his opinion is not entitled to the same amount of weight that is given to treating physicians. *See* 20 C.F.R. § 404.1527.(c)(2).

Goggans argues the decision by the ALJ to give Dr. Storjohann's opinion that Goggans has several marked impairments little weight was improper for two reasons. First, Goggans argues that the ALJ inappropriately concluded that Dr. Storjohann relied too heavily on the subjective report of symptoms and limitations reported by the Goggans. (Doc. No. 18. at 7.)  Goggans contends that "Dr. Storjohann was free to conclude that [Goggans] appeared to be exaggerating or malingering, but he did not," and therefore the ALJ's reason for giving Dr. Storjohann's opinion little weight is unacceptable. (Doc. No. 18 at 7.)

The Court is not persuaded by Goggans' argument. The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Cates*, 752 F. App'x at 922. Here, a review of the relevant medical records shows that the ALJ did not err in giving little weight to Dr. Storjohann's opinion. (R. 24, 497). The ALJ highlighted all the medical records relevant to the possible mental impairments and found that the longitudinal treatment records did not reflect the conclusion reached by Dr. Storjohann. She pointed out that during his visits to East Alabama Mental Health, Goggans made only vague complaints regarding hallucinations and never returned for treatment. (R. 26). She also noted that Goggans reported that he no longer suffered from the hallucinations and was not given a diagnosis of psychotic disorder. (R. 26). The records relating to Goggans' visits to East Alabama Mental Health showed a diagnostic impression stating that he had (1) a psychotic disorder, otherwise not identified, (2) borderline intellectual functioning, and (3) was not malingering. (R. 421). Additionally, at the hearing, Goggans did not testify that he had frequent panic attacks, and he did not testify that anxiety or nervousness affected his ability to work. (R. 26). A Function Report showed that Goggans could " . . . count change, handle a savings account and use a checkbook/money orders." (R. 21). The report also stated "[h]e does not have any problems getting along with family, friends, neighbors, or others." (R. 21). Hence, substantial evidence in the record supports the ALJ's conclusion that Dr. Storjohann's opinions were inconsistent with previous medical records and Goggans' hearing testimony. Had Goggans complained consistently of overwhelming anxiety, panic attacks, or hallucinations to his medical sources, then it could be said that the ALJ's criticism of Dr. Storjohann's reliance on the subjective report of Goggans was

inappropriate. But, because other evidence in the record shows that there was an inconsistency, the Court finds Goggan's first argument must fail.

Next, Goggans argues that the ALJ substituted her own opinion of his behavior for that of Dr. Storjohann. (Doc. No. 18. at 8-9.) The Court also finds this argument unpersuasive. Contrary to Goggans' assertion, the ALJ did not insert her own opinion over that of a medical professional. An ALJ must evaluate and weigh the medical records and is not substituting her own medical diagnoses for that of a treating doctor when she does so. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (noting an ALJ has a "responsibility to resolve conflicting medical opinions" and finding an ALJ does not "usurp the role of the physician" when weighing the credibility of a doctor's opinion "in light of other record evidence"). By evaluating past medical records, along with consideration of the vagueness of Goggans' complaints of mental problems in the past and the subjective evidence from his hearing, the ALJ properly made a determination by weighing the different opinions contained in the medical files with her observations from the hearing. Because the ALJ did not rely solely on her opinion of how Goggans presented at the hearing, but instead used evidence in the record (i.e., the longitudinal treatment records) coupled with her observation of Goggans at the hearing to reach her conclusion, Goggans' second argument fails.

## V. CONCLUSION

For the abovementioned reasons, the Court finds substantial evidence to support the findings of the ALJ and concludes the correct legal standards were applied. Accordingly, it is hereby

ORDERED that the decision of the ALJ is **AFFIRMED**.

A separate judgment will be issued.

DONE this 24th day of November, 2020.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE